UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 8:06-cr-512-T-23TBM
                                                     8:09-cv-895-T-23TBM
JAMES B. MORTON
_____/

# **O R D E R**

Pursuant to 28 U.S.C. § 2255, Morton moves (Doc. 1) to vacate his 188-month sentence, imposed after a conviction for possession of a firearm and ammunition by a felon. Morton offers no challenge to the conviction. Morton claims entitlement to a re-sentencing based on Chambers v. United States, ____ U.S. ____, 129 S. Ct. 687, 691-93 (2009), Begay v. United States, ___ U.S. ___, 128 S. Ct. 1581 (2008), United States v. Harrison, 558 F.3d 1280 (11th Cir. 2009), and United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008).

Morton pleaded guilty pursuant to a plea agreement and admitted both his prior felony convictions and his possession of a firearm and ammunition. (Doc. 28) The plea agreement (Doc. 22) contains the standard waiver of the right to appeal or collaterally challenge the conviction or sentence.

Because Morton has a prior conviction for each of escape and aggravated fleeing and eluding a police officer, his sentence was determined according to the Armed Career Criminal Act ("ACCA"). The ACCA enhancement produced a criminal history V, an offense level 31, and a guideline sentencing range of 188 - 235 months. Morton was sentenced at the low end of the advisory guideline range. Although the sentence was

properly calculated based on the law in effect on the day of sentencing, the definition of a "violent felony" and, consequently, sentencing under ACCA has changed by force of Johnson v. United States, ____ U.S. ____, 130 S. Ct. 1265 (2010) (simple battery is not a violent felony under the ACCA), Chambers v. United States, ____ U.S. ____, 129 S. Ct. 687, 691-93 (2009) (failing to report for penal confinement is not a violent felony under the ACCA), Begay v. United States, ___ U.S. ___, 128 S. Ct. 1581 (2008) (DUI is not a violent felony under the ACCA), United States v. Harrison, 558 F.3d 1280 (11th Cir. 2009) (fleeing and eluding a police officer with neither high speed nor a wanton disregard for the safety of others is not a violent felony under the ACCA),[1] and United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (carrying a concealed firearm is not a violent felony under the ACCA). The United States asserts in a perfunctory response "that . . . Morton no longer qualifies as an armed career criminal, and, consequently, he is entitled to be re-sentenced." (Doc. 17 at 7) However, the United States fails to address (1) which provision of Section 2255 entitles Morton to a re-sentencing, (2) whether the motion to vacate is precluded by the waiver provision that appears in Morton's plea agreement, and, (3) if not precluded, whether Morton has procedurally defaulted the claim.

Section 2255 authorizes a federal district court to review the validity of a conviction or sentence if (1) "the sentence was imposed in violation of the Constitution or

---

[1] Fleeing and eluding a police officer at high speed or with a wanton disregard for the safety of others remains a violent felony under the ACCA. United States v. Harris, 586 F.3d 1283 (11th Cir. 2009). The presentence investigation report fails to disclose the particulars of Morton's fleeing and eluding conviction, and the qualification of that prior conviction as a violent felony under Harrison and Harris stands undetermined.

laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack . . . ." Section 2255 encompasses a challenge asserting a violation of either a constitutional right or a statutory right, however the latter is permitted only "when the error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" Reed v. Farley, 512 U.S. 339, 348 (1994), quoting Hill v. United States, 368 U.S. 424, 428, 82 (1962). See also Burke v. United States, 152 F.3d 1329 (11th Cir. 1998) (applying Reed to Section 2255 motion), cert. denied, 526 U.S. 1145 (1999).

Neither Morton nor the United States identifies any provision of Section 2255 that applies to Morton. When imposed, the sentence was indisputably constitutional, legal, below the statutory maximum, and within the district court's jurisdiction. Consequently, sub-parts one through three of Section 2255(a) are inapplicable.[2] The only conceivably applicable provision is sub-part four of Section 2255(a), which permits relief from a sentence that "is otherwise subject to collateral attack." But Morton waived his right to collaterally attack his sentence in his plea agreement, which includes this paragraph:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing

---

[2] Relief under Rule 60(b), Federal Rules of Civil Procedure, is also inapplicable. Gonzalez v. Crosby, 545 U.S. 524, 532 (2005), confirmed that a Rule 60(b) motion is improper unless it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." No defect exists in the integrity of the earlier proceedings.

- 3 -

> Guidelines, except (a) the ground that the sentence exceeds the
> defendant's applicable guidelines range as determined by the Court
> pursuant to the United States Sentencing Guidelines; (b) the ground that
> the sentence exceeds the statutory maximum penalty; or (c) the ground
> that the sentence violates the Eighth Amendment to the Constitution . . . .

(Doc. 22 at 12)   Morton challenged his sentence on direct appeal despite the appeal waiver and utilized the second exception in the appeal waiver to argue that the sentence exceeds the statutory maximum penalty.  The circuit court rejected that argument and enforced the appeal waiver (Doc. 44):

> In his brief, Appellant argues that the enhancement of his sentence under
> the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), resulted in
> a sentence in excess of the statutory maximum for his crime, and thus that
> his challenge to that enhancement excepted from the appeal waiver in his
> plea agreement.  However, it is plain that the term "statutory maximum," as
> used in Appellant's plea agreement, means the maximum possible penalty
> for Appellant's offense, which is life imprisonment.  As this Court has
> explained:
>
>> Absent some indication that the parties intended otherwise,
>> when an exception to an appeal waiver is stated in terms of a
>> sentence imposed in excess of the statutory maximum, those
>> terms should be given their ordinary and natural meaning.
>> Ordinarily and naturally, "statutory maximum" and "the
>> maximum permitted by statute" refer to the longest sentence
>> that the statute which punishes a crime permits a court to
>> impose.
>
> United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) (granting the
> Government's motion to dismiss pursuant to the appeal waiver).
>
> A defendant may agree to waive the right to appeal potentially meritorious
> issues.  See, e.g., United States v. Bascomb, 451 F.3d 1292, 1297 (11th
> Cir. 2006) ("In negotiating an agreement, Bascomb was free to bargain
> away his right to raise constitutional issues as well as non-constitutional
> ones, and he did so."); United States v. Howie, 166 F.3d 1166, 1169 (11th
> Cir. 1999) (waiver of right to appeal includes a waiver of right to appeal
> difficult or debatable legal issues or even blatant error).

Because Appellant knowingly and voluntarily waived the right to appeal his sentence on the grounds raised in his brief, this appeal is subject to dismissal in its entirety pursuant to the waiver.

Complying with 28 U.S.C. § 2255(f)(1), Morton timely filed his motion to vacate within one year of the finality of his conviction.[3] This is Morton's first motion to vacate.[4] Although losing his "statutory maximum" argument on direct appeal, Morton in his motion to vacate argues under the third exception in the appeal waiver that the sentence violates the Eighth Amendment. However, as stated in United States v. Flores, 572 F.3d 1254, 1268 (11th Cir.) cert. denied, ___ U.S. ___, 130 S. Ct. 568 (2009):

> A sentence only violates the Eighth Amendment if it is grossly disproportionate to the offense. The Supreme Court has made it clear that outside the context of capital punishment, successful challenges to the proportionality of sentences are exceedingly rare. In non-capital cases, the Eighth Amendment encompasses, at most, only a narrow proportionality principle. Generally, when a sentence is within the limits imposed by statute, it is neither excessive nor cruel.

The circuit court on direct appeal determined that the sentence is "within the limits imposed by statute." Consequently, Morton has no Eighth Amendment claim.

---

[3] Consequently, the motion is timely without resorting to a delayed start of the limitation provided in Section 2255(f)(3) ("the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").

[4] Actually, this is Morton's third motion to vacate, but neither of the first two counts as a first motion qualifying this motion as a second or successive motion to vacate. The first motion to vacate, 8:08-cv-196-T-23TBM, was dismissed as premature because Morton's direct appeal was still pending. Morton's second motion to vacate, 8:08-cv-763-T-23TBM, was denied on the merits, a decision that initially caused the dismissal (Doc. 12) of the present motion to vacate as second or successive. But the order of dismissal was vacated (Doc. 14) when Morton showed that the second case was also premature because certiorari review was incomplete, a fact Morton had not disclosed in the second case. See Stewart v. Martinez-Villareal, 523 U.S. 637, 645 (1998) (The dismissal of a premature claim in an earlier petition is not a bar to filing a second or successive petition. "To hold otherwise would mean that a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review.), and Slack v. McDaniel, 529 U.S. 473, 487 (2000) ("A petition filed after a mixed petition has been dismissed under Rose v. Lundy before the district court adjudicated any claims is to be treated as 'any other first petition' and is not a second or successive petition.").

Even absent the waiver of his right to appeal and to collateral attack, Morton enjoys no benefit from Begay because he procedurally defaulted the claim by not timely asserting the claim both at sentencing and on appeal. United States v. Coley, 336 Fed. Appx. 933, **2-3 (11th Cir. 2009), petition for cert. filed (U.S. Dec. 9, 2009) (No. 09-8126), confirms a defendant's preclusion from reliance on Begay in a motion to vacate after a procedural default:

> Coley has not argued that his sentence violates any constitutional right, but only that it violates the sentencing guidelines after Begay and Archer. See Hunter [v. United States], 559 F.3d [1188,] 1189 [11th Cir. 2009][5] (observing that because a prisoner erroneously sentenced as an armed career criminal had failed to show the denial of a constitutional right, he could not attack his sentence in a § 2255 proceeding). Accordingly, if Coley's claim "could have been raised on direct appeal," then it is not cognizable under § 2255.
>
> Coley did not raise this issue on direct appeal. In fact, it appears that he filed no direct appeal at all. Nor does Coley offer any reason why he could not have raised this issue on direct appeal. Of course, Begay and Archer had not yet been decided when Coley was sentenced in 2003; however, if he believed that his career offender status was improper under the guidelines that claim could have been made on direct appeal—just as Begay and Archer later did. Cf. Smith v. Murray, 477 U.S. 527, 534-35, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986) (holding that perceived futility in raising an issue on direct appeal does not constitute cause for not doing so); Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) ("Futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.") (internal citation and quotation marks omitted); Turner v. Crosby, 339 F.3d 1247, 1281 (11th Cir. 2003) ("If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim.").

---

[5] The Supreme Court recently vacated and remanded Hunter for further consideration. Hunter v. United States, 2009 WL 154867 (U.S. Jan. 19, 2010) (No. 09-122).

> Because his status as a career offender is a nonconstitutional issue that Coley could have raised on direct appeal, it is not cognizable on collateral review under § 2255.

Coley's reasoning is persuasive.[6] Aside from the appeal waiver, nothing precluded Morton from raising on direct appeal his challenge to the violent felony determination. As a consequence, Morton procedurally defaulted the claim he pursues. United States v. Frady, 456 U.S. 152, 166 (1982); Mills v. United States, 36 F.3d 1052, 1055-56 (11th Cir. 1994). See also Howard v. United States, 374 F.3d 1068, 1070 (11th Cir. 2004) (Howard "procedurally defaulted his claim by not raising it at his sentencing proceeding where the error occurred . . . ."), and McCoy v. United States, 266 F.3d 1245, 1247 (11th Cir. 2001), cert. denied, 536 U.S. 906 (2002) ("[B]ecause McCoy did not raise his Apprendi claims on direct appeal, he is procedurally barred from raising them in his initial § 2255 motion."). To overcome his procedural default, Morton must show both "cause" and "prejudice." The "novelty" of the argument is not "cause." See Waldrop v. Jones, 77 F.3d 1308, 1315 (11th Cir.1996) ("[A] rule is 'novel,' and therefore cause for procedural default, only if the petitioner did not have the legal tools to construct the claim before the rule was issued."). And the absence of Begay is not "cause." See McCoy, 266 F.3d at 1258-9 ("[T]he Apprendi claim McCoy now seeks to raise was reasonably available to his counsel at the time of McCoy's conviction. Therefore, we hold that because McCoy cannot show cause for his failure to raise the issue on direct appeal, he is procedurally barred from raising it now.").

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

**CONCLUSION**

Accordingly, the motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.[7] The clerk shall enter a judgment against Morton and close this case.

ORDERED in Tampa, Florida, on March 24, 2010.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[7] In Matthews v. United States, 2009 WL 2525573 (August 17, 2009) (No. 2:09-cv-130-FtM-29SPC), Judge John Steele ruled that the motion to vacate was precluded by both Coley and the unconditional waiver of appeal and collateral attack. Although other decisions from the district reach a different result, none involves an appeal waiver and each was issued before Coley. McCarty v. United States, 2009 WL 1456386 (May 22, 2009) (No. 8:08-cv-1619-T-24TBM) (found guilty at trial), George v. United States, 650 F. Supp. 1196 (M.D. Fla. 2009) (pleaded guilty without a plea agreement), and Kendrick v. United States, 2009 WL 2958976 (Sept. 15, 2009) (No. 5:08-cv-447-Oc-10GRJ) (whether the conviction for carrying a concealed firearm qualifies as a violent felony was excluded from the appeal waiver).

Although overlooked by the United States in the present instance and by both the parties and the courts elsewhere in several similar cases, an issue exists whether Morton under any circumstance receives the benefit of a mere change in the rules of sentencing (a sentencing enhancement, in this instance) or other routine, evolutionary changes in the applicable law--changes of less than constitutional dimension and of less than "fundamental importance." I concur in principle with Judge Paul Huck in United States v. King, 2010 WL 181458 *4, n.4 (S.D. Fla. 2010):

> The Supreme Court held in Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), that federal habeas petitioners may avail themselves of new rules under two narrow circumstances. First, "a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " Id. at 307, 311. Rules falling in that category are commonly referred to as "substantive" rules. Second, the new rule should be applied retroactively "if it requires the observance of 'those procedures that . . . are implicit in the concept of ordered liberty.' " Id. The Supreme Court did not hold that Begay is retroactively applicable, and under the principles announced in Teague some courts have held that Begay is not retroactive. See, e.g., Sun Bear v. United States, No. CIV-08-3021, 2009 WL 2033028, at *3-5 (D.S.D. July 9, 2009). Under Sun Bear's reasoning, King's motion would be untimely. But other courts have ruled otherwise. See, e.g., United States v. Blue, No. CIV-09-1108, 2009 WL 2581284, at *4 (D.Kan. Aug. 20, 2009) (holding that a U.S. Supreme Court decision determining that certain escape convictions were not violent felonies under the Act was a substantive rule that applied retroactively on collateral review). The Blue court determined that Begay is a substantive rule (as the Government conceded in its papers) because Begay narrowed the scope of a criminal statute by interpreting its terms. The Court notes, however, that the Eleventh Circuit has held that the Act is not a substantive criminal statute, but "merely a sentence enhancement provision." United States v. McGatha, 891 F.2d 1520, 1527 (11th Cir. 1990). Indeed, the purpose of the Act (as discerned from its text) is not to criminalize conduct, but to attach an enhanced penalty to conduct that was the subject of other criminal prosecutions.